UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEIMCO DEVELOPMENT CO., LTD., | ) | Case No.: 1:10 CV 449 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| LISA P. JACKSON, ADMINISTRATOR, | ) | |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending in the above-captioned case are: (1) Defendant Stephen W. Madewell's ("Madewell") Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim(ECF No. 5); and (2) Defendants Steven M. Dettelbach, Lisa P. Jackson, Lt. Gen. Robert L. Van Antwerp, Jr., and Eric H. Holder, Jr.'s Motion to Dismiss for lack of subject matter jurisdiction and personal jurisdiction (ECF No. 7). For the following reasons, the court grants both Motions.

**I. FACTS AND PROCEDURAL HISTORY**

Plaintiff Leimco Development Co., Ltd. ("Leimco" or "Plaintiff") is a company that owned land in Painesville, Ohio.[1] In June 5, 2003, the Environmental Protection Agency ("EPA") issued Leimco a Findings of Violations and Compliance Order pursuant to 33 U.S.C. § 1319(a), alleging

---

[1] Leimco is not the sole owner of the property. Leimco entered into a Joint Venture Agreement with Shamrock Business Center, Ltd. and Mortell & Associates for the purpose of acquiring the property. (Am. Compl., ¶ 16.)

that Leimco improperly filled in wetlands at its Painesville property. (Am. Compl., ECF No. 4, ¶ 12.) Leimco and Metroparks entered into a Joint Mitigation Plan, and the EPA and the United States Army Corps of Engineers ("Corps") later approved the Joint Mitigation Plain. (*Id.* ¶ 21.) Leimco alleges that on November 17, 2004, it entered into an agreement ("Metroparks Agreement") with Defendant Metroparks that made Metroparks responsible for the supervision, preservation, enhancement, and creation of wetlands pursuant to the Joint Mitigation Plan. (Am. Compl., ¶ 22.) The Metroparks Agreement between Leimco and Metroparks stated that Leimco would convey the Mitigation Site to Metroparks when the Joint Mitigation Plan was accepted and completed by the Corps. (*Id.* ¶ 24.)

Leimco and the EPA entered into a Consent Agreement and Final Order ("CAFO") on April 25, 2005. (*Id.*, ¶ 13.) The CAFO required Leimco to submit a Wetland Mitigation Replacement Plan. (*Id.* ¶ 15.) Plaintiff alleges that

> [t]he CAFO provided that Leimco was to submit a Wetland Mitigation Replacement Plan which provided for, among other things the following items:
> (a) Identification of the wetlands mitigation project involving Leimco and other unrelated third parties that will occur at the 340 acre Site located in Lake County, Leroy Township, Ohio (hereinafter "Mitigation Site");
> (b) A plan to create, restore, enhance and preserve no less than 38.72 acres of the 67 acres of wetlands and aquatic habitat, located within areas 1, 2, 3 and 4 consistent with a Preliminary Wetlands Assessment and Mitigation Site Evaluation submitted by Leimco in June of 2004 as amended;
> (c) A plan to be conducted, in concert with unrelated third parties, to restore, enhance and preserve the biological wetland functions existing on no less than 71 acres of additional wetland acres, excluding buffer, of the Mitigation Site;
> (d) Compliance with the Mitigation and Monitoring Guidelines, prepared by the Corps;
> (e) A plan providing for the restoration of biological and habitat functions for the 23-acre abandon/prior-converted agricultural field

>> within the Mitigation Site; and
> (f) The transfer by deed of ownership interest in the Mitigation Site, including all upland buffer areas to Defendant Metroparks, when [the] project [is] completed and accepted by Defendant Corps.

(*Id*., ¶ 15.)

On April 5, 2007, the Corps issued a final ATF § 404 Clean Water Act Permit to Leimco regarding implementation of the Joint Mitigation Plan. (*Id*. ¶ 25.) On February 21, 2008, the EPA issued a Notice of Non-Compliance with that Permit, "based on its contention that 53.5 acres of the Wetlands Mitigation Project at the Mitigation Site had been adversely impacted by mechanical clearing and deforestation activities." (*Id*. ¶ 26.) The Notice of Non-Compliance required that Leimco "submit a plan specifying in detail the corrective actions that Leimco proposed taking with respect to the alleged noncompliance with the Joint Mitigation Plan and CAFO." (*Id*. ¶ 28.) Plaintiff alleges that since the issuance of the Notice of Non-Compliance, the EPA and the Corps have prevented it from completing the Joint Mitigation Plan. (*Id*. ¶ 30.) Further, Plaintiff alleges that, "[p]ursuant to the issuance of the Notice of Non-Compliance, Defendants EPA and the Corps seek to enforce a civil penalty against Leimco in the amount of $811,500.00 as of the filing of this Complaint plus an additional $1,000.00 per day thereafter." (*Id*. ¶ 32.)

Plaintiff filed its Complaint on March 2, 2010, and alleged the following counts: (1) Declaratory Judgment against the EPA and the Corps; and (2) Declaratory Judgment against Metroparks. On April 1, 2010, Plaintiff filed an Amended Complaint and added a third Count, Breach of Contract against Metroparks. (Am. Compl., ECF No. 4.) Plaintiff requests that the court "[a]djudge and declare . . . that Leimco is in full compliance with the CAFO and the Joint Mitigation Plan and that Defendants EPA and the Corps are prohibited from interfering with the completion of the Joint Mitigation Plan and/or the issuance of permits for the initial site and/or Mitigation Site."

Plaintiff further requests that the court "[a]djudge and declare . . . that Defendant Metroparks is required to indemnify, defend and hold harmless Leimco from any and all costs and expenses associated with any actions needed to bring Leimco in compliance with the Joint Mitigation Plan." In addition, Plaintiff seeks monetary damages from Metroparks for its alleged breach of contract. (*Id*. at p. 9.)

## II. LEGAL STANDARD

### A. 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may take the form of either a facial or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks challenge the sufficiency of the pleading itself. *Id.* Factual attacks, on the other hand, challenge the factual existence of subject-matter jurisdiction, regardless of what is or might be alleged in the pleadings. *Id.*

When adjudicating a motion to dismiss based upon a facial attack, the Court must accept all material allegations of the complaint as true and must construe the facts in favor of the non-moving party. *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). *See also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (holding that all reasonable inferences must be drawn in favor of the plaintiff when evaluating a facial attack on subject-matter jurisdiction).

In contrast, a factual attack contests the validity of the facts alleged as support for subject-matter jurisdiction. *Ritchie*, 15 F.3d at 598. With a factual challenge, no presumption of truthfulness arises for either party, and the court must weigh the evidence to determine its power to hear the case. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). The court

may consider both the pleadings and evidence not contained in the pleadings. *Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000).

### B. 12(b)(6)

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and recently in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 129 S.Ct. at 1949, further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### III. LAW AND ANALYSIS

#### A. Federal Defendants' Motion to Dismiss on Sovereign Immunity Grounds

Pursuant to the doctrine of sovereign immunity, "the United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The consent of the United States to suit must be "unequivocally expressed" in a statute enacted by Congress. *Id.*; *see also United States v. Idaho*, 508 U.S. 1, 6-7 (1993). Federal Defendants argue that Plaintiff has not demonstrated that the United States waived its sovereign immunity in this case.

#### 1. 28 U.S.C. §§ 1331, 1355, and 2201

Leimco does not allege that the Federal Defendants waived sovereign immunity in its Complaint. Leimco merely alleges that the Court "has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1355, and 2201." (Am. Compl. ¶ 7.) Federal Defendants argue that Leimco does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the statute does not provide "a general waiver of sovereign immunity; it merely establishes a subject matter that is within the competence of federal courts to entertain." *Whittle v. United States*, 7 F.3d

1259, 1262 (6th Cir. 1993) (citation omitted). Federal Defendants further argue that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not confer federal subject matter jurisdiction because it "merely provides an additional remedy in cases where jurisdiction otherwise exists." (Madewell's Memo. in Supp. of Mot. to Dismiss, ECF No. 7-1, at p. 16, citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).) *See also Michigan S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n., Inc.*, 287 F.3d 568, 575 (6th Cir. 2002) ("It is well-settled that the Declaratory Judgment Act cannot serve as an independent basis for federal subject matter jurisdiction."). Finally, the Federal Defendants argue that 28 U.S.C. § 1355, which gives the district courts exclusive jurisdiction over proceedings to recover or enforce fines or penalties, does not provide a basis for subject matter jurisdiction. Leimco does not respond to these arguments. Upon review of Defendants' arguments, the court finds them to be well-taken.

### 2. The Administrative Procedure Act

Leimco argues in its Opposition Brief that the United States waived its sovereign immunity, pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"). (Pl.'s Opp. to Fed. Defs.' Mot. to Dismiss, ECF No. 13, at p. 7.) Leimco maintains that,

> [t]he APA states that final agency action is subject to judicial review if there is no other adequate remedy available in a court. 5 U.S.C. § 704. The [Clean Water Act] does not comprehensively provide for judicial review, and as result, review takes place in district courts pursuant to the APA.

(*Id.*) Relying on *Media General Operations, Inc. v. Herman*, 152 F.Supp.2d 1368, 1371-72 (S.D. Ga. 2001) (citing *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 152 (5th Cir. 1998), Leimco further argues that the APA waives sovereign immunity and provides subject matter jurisdiction in conjunction with 28 U.S.C. § 1331 over final agency action. In Leimco's view, if the court finds that

the Federal Defendants's Notice of Non-Compliance constituted a "final agency action," then the United States has waived its sovereign immunity.

In response to Leimco's argument that the APA waives sovereign immunity, Federal Defendants first maintain that Leimco never alleged it was relying on the APA for subject matter jurisdiction in its Complaint and second maintain that § 701(a)(1) of the APA prohibits subject matter jurisdiction. Section 701(a)(1) provides in relevant part that "[t]his chapter [on judicial review] applies, according to the provisions thereof, except to the extent that . . . statutes preclude judicial review." 5 U.S.C. § 701(a)(1). The Clean Water Act precludes judicial review of pre-enforcement activities. *Southern Ohio Coal Company v. Office of Surface Mining*, 20 F.3d 1418, 1426 (6th Cir. 1994) (The Court adopted the Seventh Circuit's determination that the "express provision for judicial review [of a non-final order for assessment of administrative penalties found in 33 U.S.C. § 1319(g)(8)], in combination with the absence of a parallel provision for review of compliance orders" further supported the finding that the Clean Water Act did not afford pre-enforcement review of compliance orders.). Therefore, Federal Defendants argue that because the Clean Water Act precludes pre-enforcement review, § 701(a)(1) of the APA precludes pre-enforcement review. *See Southern Ohio Coal*, 20 F.3d at 1426-28; *see also Rueth v. United States*, 13 F.3d 227, 231 (7th Cir. 1993).

### a. Which Agency Action is at Issue

There seems to be some confusion as to which action of the EPA Leimco is maintaining constitutes a Final Agency Action. On the one hand, Leimco is challenging the findings in the Notice of Non-Compliance, not the terms of the administrative order or the § 404 permit. (*See* Am. Compl. ¶¶ 33, 37 ("Leimco contends that it has not violated the Joint Mitigation Plan or the CAFO

as alleged in the Notice of Non-Compliance and that Defendant EPA and/or the Corps improperly prevented Leimco from completing the Joint Mitigation Plan and is improperly seeking revisions to the Joint Mitigation Plan and/or CAFO."); Pl.'s Opp. to Fed. Defs.' Mot. to Dismiss, ECF No. 13, at p. 2 (The Federal Defendants "have wrongfully determined that Leimco is not in compliance with either the CAFO or Permit.").) While there is no doubt that Leimco is challenging the EPA's issuance of the Notice of Non-Compliance, Leimco nevertheless maintains that because issuing the CAFO and Permit is a final agency action, the court has subject matter jurisdiction.

The court finds that the question before it is whether the Notice of Non-Compliance constitutes a final agency action. Plaintiff does not contest the fact that it is governed by the terms of the CAFO and the Permit. Instead, Plaintiff is contesting the Notice of Non-Compliance with their terms. Plaintiff maintains that it has complied with its obligations in the CAFO and Permit and that the EPA's finding to the contrary is incorrect and is wrongfully preventing Plaintiff from continuing to implement its Joint Mitigation Plan.

### b. Analysis of What Constitutes a Final Agency Action

The Sixth Circuit has determined that "final agency action" under the Clean Water Act is subject to review while "pre-enforcement action" is not. *Michigan Peat v. United States EPA*, 175 F.3d 422, 427 (6th Cir. 1999) (citing *Crystal River v. United States Envtl. Protection Agency*, 35 F.3d 1073, 1077-78 (6th Cir. 1994)). An Order is a final agency action if "[s]tatutorily, there [i]s nothing left for the EPA to do." *Peat*, at 428. In *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997), the Supreme Court determined that "two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decision making process, – it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which

'rights or obligations have been determined,' or from which 'legal consequences will flow.'" (internal citations omitted).

Plaintiff describes the Notice of Non-Compliance as " requir[ing] Leimco to submit a plan specifying in detail the corrective actions that Leimco proposed taking with respect to the alleged noncompliance with the Joint Mitigation Plan and CAFO." (Am. Compl., ¶ 28.) Leimco relies on *Michigan Peat v. EPA*, 175 F.3d 422, 428 (6th Cir. 1999), wherein the court determined that the EPA's acceptance of the issuance of a permit that allowed a landowner to discharge material into wetlands was a final agency action. Federal Defendants counter that *Michigan Peat* is inapplicable because the EPA in that case withdrew its objections to the proposed § 404 permit issued by the State of Michigan, and thus, there was a final agency action because the EPA had no further action to take once it agreed to the § 404 permit. (Fed. Defs.' Reply, ECF No. 17, at p. 6.) Federal Defendants further argue that the Notice of Non-Compliance cannot be a final agency action because the EPA has discretion to determine whether it will pursue enforcement of Leimco's noncompliance. The court in *Michigan Peat* determined that approval of a revised permit, not a Notice of Non-Compliance, was a final agency action. *Michigan Peat*, 175 F.3d at 428. The court finds this difference critical. In *Southern Ohio Coal*, 20 F.3d at 1427, the court, in addressing the issue of whether a district court could enjoin the EPA from interfering with an emergency plan for removal of water from a mine, and determined that "district courts are without jurisdiction to review pre-enforcement compliance orders issued under the [Clean Water Act]." *Michigan Peat* did not overturn *Southern Ohio Coal* in any way. Instead, *Michigan Peat* distinguished the facts in the two cases and stated that the plaintiff in *Southern Ohio Coal* "challenged the EPA's pre-enforcement emergency response activity, not a final agency action." *Michigan Peat*, 175 F.3d at 428.

-10-

The court also finds that the supplemental authority submitted by Plaintiff on February 4, 2011, *National Mining Association v. Jackson*, No. 10-1220, 2011 U.S. Dist. LEXIS 3710, (D.D.C. Jan. 14, 2011), is not persuasive. In that case, the court determined that two memoranda issued by the EPA, which changed the permit process, constituted final agency actions. Those memoranda established an additional step in the permit-issuance process that was not set forth in section 404(b)(1) of the Clean Water Act. Specifically, they created a new level of review by the EPA and a new "permitting pathway not contemplated by the current regulatory structure." *Id.* at *40. The court found that the memoranda were final agency action because they were "applied in practice as if [they] were final." *Id.* at *45. That case is distinguishable from this case because the memoranda at issue in *National Mining Association* impacted the ability of plaintiffs to seek a permit in a final way, whereas the Notice of Non-Compliance in this case does not add additional requirements, merely interprets Plaintiff's compliance with existing agreements, and thus starts a compliance process that has yet to become final.

The court finds that the Notice of Non-Compliance is a pre-enforcement activity, and therefore the APA does not waive sovereign immunity. The Notice of Non-Compliance is not a "consummation" of the EPA's decision-making process. *Bennett*, 520 U.S. at 178. The obligations which it imposes do not have legal consequences comparable to those of a final agency action. In fact, although the Notice of Non-Compliance discusses potential future penalties, it does not require immediate payment of these penalties. (Notice of Non-Compliance, ECF No. 4-3, at p. 2.) Rather, the Notice of Non-Compliance is similar to the "compliance orders" that *Southern Ohio Coal* determined district courts did not have the jurisdiction to review. *See also Bethlehem Steel Corp. v. EPA*, 669 F.2d 903, 910 (3d Cir. 1982) ("[T]he notice of noncompliance issued by EPA only

-11-

represents a 'threshold determination' triggering further proceedings.") (citation omitted); *Solar Turbines Inc. v. EPA*, 879 F.2d 1073, 1078 (3d Cir. 1989) ("[P]arties receiving notice of noncompliance are first encouraged to resolve their problems with the states and with EPA in an informal, less costly manner. Judicial review becomes appropriate when the EPA, failing efforts at negotiation and compromise, takes steps at enforcement subjecting the facility to consequential penalties."). As a result, this court lacks subject matter jurisdiction under the APA over the claims against the Federal Defendants. As argued by the Federal Defendants, the Notice of Non-Compliance is "an administrative enforcement measure designed to prompt Leimco to take action to come into compliance with the Order and Mitigation Plan and thus obviate the need for EPA to bring a judicial action in federal district court to enforce the Order." (Fed. Defs.' Reply, ECF No. 17, at p. 1.)

### 3. *Leedom v. Kyne*

Finally, Plaintiff also argues that this court has subject matter jurisdiction over this claim pursuant to *Leedom v. Kyne*, 358 U.S. 184 (1958). The *Leedom* decision held that when an agency's action or threat of action is manifestly outside of its delineated authority, it can be challenged by the district court. *Leedom*, at 188-189. The court finds that this argument is not well-taken. First, "the *Leedom* doctrine may only be invoked under severely limited circumstances." *Southern Ohio Coal*, 20 F.3d at 1427. Second, the EPA has the authority to issue notices of non-compliance. *See e.g.* Section 120 of the Clean Air Act, 40 C.F.R. § 66.11(a) ("The Administrator shall issue a notice of noncompliance to the owner or operator of any source which he determines is in violation of applicable legal requirements and which is located in a State without an approved Section 120 program."); 40 C.F.R. § 66.12(a) ("Each notice of noncompliance shall be in writing."). Therefore,

-12-

issuing one in this case was not outside of the EPA's delineated authority.

### 4. Personal Jurisdiction

Federal Defendants also argue that Plaintiff did not establish personal jurisdiction over the Federal Defendants because Plaintiff failed to serve a valid summons pursuant to Federal Rule of Civil Procedure 4(a)(1) and (b).  As the court has already determined that it lacks subject matter jurisdiction to decide the claims against the Federal Defendants, the court need not address the issue of personal jurisdiction.

### B.  Madewell's Motion to Dismiss

### 1. Suing Madewell Personally

The parties agreed during a status conference with the court that Plaintiff was not suing Madewell in his personal capacity.  Rather, Plaintiff acknowledge that it sued Madewell in his capacity as the Executive Director of the Metroparks.  Plaintiff made the same representation in its Opposition Motion.  (Pl.'s Opp. to Madewell's Mot. to Dismiss, ECF No. 12, ECF No. 12, at pp. 5-6.)

### 2. Subject Matter Jurisdiction

Leimco sues Metroparks for a state-law breach of contract claim.  Leimco alleges that "[t]his Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1355, and 2201."  (Am. Compl., ¶ 7.)  Metroparks argues that 28 U.S.C. § 113, the Declaratory Judgment Act, does not confer an independent basis for federal jurisdiction over it. Before invoking the Declaratory Judgment Act, "a federal court must 'have jurisdiction already' under some other federal statute." *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007) (quoting *Heydon v. MediaOne of S.E. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003)).  Metroparks further argues that 28 U.S.C. § 1355 does not

confer jurisdiction because it only allows actions by a public official to collect sums for the public treasury, not private rights of actions. Plaintiff concedes in its Opposition that 28 U.S.C. §§ 1331, 1355, and 2201, do not confer jurisdiction over Metroparks. (Pl.'s Opp. to Madewell's Mot. to Dismiss, ECF No. 12, ECF No. 12, at p. 8.)

Plaintiff argues instead that the court has supplemental jurisdiction over its claims against Metroparks. (Pl.'s Opp. to Madewell's Mot. to Dismiss, ECF No. 12, at p. 8.) Plaintiff argues that its claims against Metroparks arise from the same case and controversy as Plaintiff's claims against the Federal Defendants in this case. (*Id*.) Since the court has already determined that it lacks subject matter jurisdiction over the claims against the Federal Defendants, it cannot exercise supplemental jurisdiction over thee claims against the Defendant Metroparks. Therefore, the court dismisses Plaintiff's claims against Defendant Metroparks.

## IV. CONCLUSION

For the aforementioned reasons, the court hereby grants Defendant Madewell's Motion to Dismiss (ECF No. 5), and grants the Federal Defendants' Motion to Dismiss (ECF No. 7). Madewell's Motion to Dismiss on the alternate grounds of failure to state a claim is moot. Furthermore, the court finds that it is not necessary to hold a hearing on this issue as there are no remaining issues of law or fact that were not covered by the parties in their filings.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

August 9, 2011